UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MICKEY J. YANNONE,

                           Plaintiff,              **REPORT AND RECOMMENDATION**

      -against-

                                                           06 Civ. 15502 (SCR) (GAY)

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                           Defendant.
--------------------------------------------------------X

TO THE HONORABLE STEPHEN C. ROBINSON, United States District Judge:

Plaintiff Mickey Yannone commenced this action pursuant to 42 U.S.C. § 405(g), challenging the decision by the Commissioner of Social Security ("the Commissioner") to deny plaintiff's application for disability insurance benefits on the ground that plaintiff was not disabled. Presently before this Court are the parties' cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons that follow, I respectfully recommend that the case should be remanded to the Commissioner for further findings.

**I. BACKGROUND**

Plaintiff was born on October 5, 1954. Up until the time of his injury, he had worked in his family-owned glass installation business for practically all of his life. Plaintiff alleges that he became disabled on November 11, 2004 after falling from a

-1-

ladder onto a concrete floor and experiencing severe trauma to his right shoulder.

On November 23, 2004, plaintiff filed an application for disability benefits but his application was denied on initial administrative review. On March 1, 2006, pursuant to plaintiff's timely request, he appeared and testified at a hearing held before Administrative Law Judge Brian W. Lemoine ("the ALJ"). On March 7, 2006, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act ("SSA") and, therefore, was not entitled to disability benefits. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on November 27, 2006. This action followed.

## II. STANDARD OF REVIEW

The Commissioner's factual findings are conclusive if they are supported by substantial evidence. See 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting interferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quotation and citation omitted). The reviewing court "may only set aside a determination which is based upon legal error or not supported by substantial evidence." Yancey v. Apfel, 145 F.3d 106,

111 (2d Cir. 1998) (quotation and citation omitted).

**III. STATUTORY DISABILITY**

The SSA defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). In addition, a person is eligible for disability benefits under the SSA only if

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Second Circuit has adopted a five-step analysis for evaluating disability claims under the SSA:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past

3

work. Finally, if the claimant is unable to perform her past work, the
burden then shifts to the Commissioner to determine whether there is
other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999). In determining whether there is other work which the claimant could perform, "the Commissioner must consider four factors: (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation and citation omitted).

### IV. ALJ'S DETERMINATION

Here, the ALJ applied the five-step procedure and concluded that plaintiff was not disabled within the meaning of the Act. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. At step two, the ALJ determined that plaintiff has status post right rotator cuff tear which constitutes a "severe" impairment. At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P.

At step four, the ALJ found plaintiff retained the following residual functional capacity: "The plaintiff can lift up to twenty pounds with his left non-dominant upper extremity and up to ten pounds with his right major dominant upper extremity. He cannot perform overhead reaching with his right upper extremity. He is able to stand, walk and sit for at least six hours each per day." Ultimately, the ALJ concluded at step

4

four that plaintiff is unable to return to his past relevant work as a glass installer due to its excessive exertional requirements.

At step five, the ALJ asked the vocational expert to consider an individual with plaintiff's age, education, and work history who was capable of lifting up to twenty pounds with the left non-major extremity, lifting no more than ten pounds with his right major extremity, could do no overhead reaching with the right major upper extremity, and had no limitations regarding the ability to sit, stand, or walk. The vocational expert testified that, assuming the hypothetical individual's specific work restrictions, he would be able to work as a ticket seller, small product assembler and information clerk. Based upon additional testimony from the vocational expert, the ALJ found that plaintiff is capable of making a vocational adjustment to other work that exists in significant numbers in the national economy. The ALJ concluded, therefore, that plaintiff was not under a "disability" as defined in the SSA.

**V. ANALYSIS**

    A. <u>Credibility of Plaintiff's Subjective Complaints of Pain</u>

The ALJ did not find plaintiff's allegations as to his pain and functional limitation totally credible for several reasons. First, the ALJ stated that he "carefully observed" plaintiff and noted that he was not in any obvious pain or discomfort when walking in or out of the hearing room or while sitting during the course of the hearing, and lacked the general physical appearance of a person who might have been experiencing prolonged or severe pain. Second, the ALJ acknowledged that "although medical evidence

reveals impairments that could have reasonably caused the symptoms alleged, claimant's symptoms are not of such intensity, frequency, or duration as to preclude substantial gainful activity." Third, the ALJ found plaintiff's allegations of disabling impairments unsupported by his own statements and actions, since plaintiff testified that he had no difficulty walking, standing, or sitting and is able to use the computer, shop, read, drive, take power walks and watch television. Plaintiff contends that the ALJ erred in assessing plaintiff's credibility and the ALJ's decision to reject plaintiff's subjective complaints of pain is not supported by substantial evidence.

It is within the ALJ's discretion to evaluate plaintiff's credibility "and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Pardilla v. Apfel, No. 98 Civ. 5357, 2000 WL 145463, at *6 (S.D.N.Y. Feb. 9, 2000). However, "[i]f the ALJ decides to reject subjective testimony concerning pain and other symptoms, [he] must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [his] determination is supported by substantial evidence." Lugo v. Apfel, 20 F. Supp.2d 662, 663 (S.D.N.Y. 1998) (quotation and citations omitted). In order to satisfy the substantial evidence requirement,

> the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments could reasonably be expected to produce the pain or other symptoms alleged. Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work.

6

> When the objective evidence alone does not substantiate the intensity, persistence or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

Brodbeck v. Astrue, No. 5:05-CV-0257, 2008 WL 681905, at *19 (N.D.N.Y. Mar. 7, 2008) (citing 20 C.F.R. §§ 404.1529(a),(c), 416.929(a),(c)) (other citations and internal quotations omitted).

Here, the ALJ assessed the plaintiff's testimony in accordance with the guidelines set forth above. The ALJ acknowledged that plaintiff's impairment could reasonably cause the symptoms alleged, and went on to evaluate the intensity, persistence, and limiting effects of plaintiff's symptoms to determine the extent to which they limit his capacity to work. In doing so, the ALJ noted the following: medical reports indicate that there is some improvement of plaintiff's symptoms following the surgery; plaintiff describes his pain as intermittent in nature; medical evidence shows no limitation in the use of plaintiff's left arm or with standing, walking, or sitting capabilities; and plaintiff's own statements indicate that he is leading an active existence in spite of his allegations. The ALJ also addressed plaintiff's demeanor and carriage during the proceeding and how they conflicted with his allegations. See Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998) (although such observations should be assigned only limited weight, an ALJ may take account of a plaintiff's physical demeanor in weighing the credibility of her testimony as to physical disability).

The inquiry here is not whether the plaintiff experiences pain; the court does not doubt that he does. The inquiry is whether he experiences such pain as to preclude other employment; the court finds that he does not. Plaintiff himself described his pain as intermittent, and admitted that he had no difficulty walking, standing or sitting and that he is able to use the computer, shop, read, drive, take power walks and watch television. Moreover, none of the objective medical evidence suggests that plaintiff's symptoms are so severe as to preclude employment. In sum, substantial evidence exists which suggests that plaintiff is capable of performing other work and, consequently, that the ALJ properly discounted his allegations of pain and functional limitations. Accordingly, I respectfully recommend that plaintiff's contentions regarding the ALJ's assessment of his credibility are without merit.

B. Treating Physician Rule

Plaintiff contends that the ALJ, in determining plaintiff's residual functional capacity, assigned no weight to any medical opinions in the record and selectively chose portions of medical reports to conclude that plaintiff was not disabled. Plaintiff also specifically argues that the ALJ ignored the opinion of Dr. Appel, plaintiff's main treating physician and orthopedic surgeon, who opined on several occasions that "Mr. Yannone cannot return to work. He has a temporary total disability."

It is well settled that the ALJ must give controlling weight to the opinion of a treating physician if it is well supported by the medical record and is not inconsistent with other substantial evidence. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Pursuant to the regulations, the ALJ must consider the following factors when assigning weight to the opinion of a

8

treating source: (1) the length, nature, and extent of treatment and the frequency of examination; (2) the relevant evidence presented by the treating source in support of his opinion; (3) whether the opinion is consistent with the record as a whole; (4) whether the treating source is a specialist in the area relating to his opinion; and (5) other factors which tend to support or contradict the opinion. See Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); 20 C.F.R. § 404.1527(d)(2)-(6).

Here, in the first instance, Dr. Appel's opinion that plaintiff cannot return to work due to a temporary total disability is a legal opinion reserved for the Commissioner and is, therefore, not entitled to controlling weight. See Snell, 177 F.3d at 133. Further, the ALJ specifically acknowledged that he must consider any medical opinions in the record concerning the nature and severity of plaintiff's impairment and resulting limitations in accordance with 20 C.F.R. § 404.1527. To this end, the ALJ was "certainly under no obligation to chant the mantra 'treating physician rule' in addition to invoking it by code citation and applying it consistent with the evidence in the record." Shipman v. Astrue, No. 02-CV-6987, 2008 WL 216615, at *7 (S.D.N.Y. Jan. 23, 2008). See also Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (upholding ALJ's denial of benefits even though "on the face of the ALJ's opinion" it was unclear "whether the ALJ considered (or even was aware of) the applicability of the treating physician's rule"). In sum, contrary to plaintiff's contentions, the record clearly indicates that the ALJ considered the medical opinions of Dr. Appel, Dr. Colden and Dr. Inzerillo and accorded them appropriate weight to the extent they are supported by objective clinical findings and other record evidence. Accordingly, I respectfully recommend that plaintiff's contentions regarding the ALJ's application of the treating physician rule are without merit.

C. Residual Functional Capacity Assessment

Plaintiff argues that the ALJ failed to properly evaluate plaintiff's residual functional capacity ("RFC") because the ALJ failed to make a function-by-function analysis or to consider the nature and extent of plaintiff's physical limitations. In assessing RFC

> the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that indicate the source's opinions as to the claimant's ability to perform each activity. 20 C.F.R. § 404.1513(c)(1). Only after that analysis is completed, may RFC be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy.

Brodbeck, 2008 WL 681905, at *7 (citation omitted). See S.S.R. 96-8p, 1996 WL 374184, at *1. Further,

> [t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing bases (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

S.S.R. 96-8p, 1996 WL 374184, at *7.

Here, at step four, the ALJ found that plaintiff retained the following residual functional capacity:

> The plaintiff can lift up to twenty pounds with his left non-dominant upper extremity and up to ten pounds with his right major dominant upper extremity. He cannot perform overhead reaching with his right upper extremity. He is able to stand, walk and sit for at least six hours each per day.

The ALJ based his conclusion upon his consideration of the MRI results, medical

reports from treating and consultative physicians and plaintiff's allegations and testimony, each of which the ALJ discussed at length in his opinion  The ALJ ultimately determined that plaintiff has the residual functional capacity to perform a significant range of light work.  As defined in the regulations, and as quoted by the ALJ in his decision, light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities.

See 20 C.F.R. § 404.1567(b).

In sum, the ALJ's findings constitute the required function-by-function determination of plaintiff's RFC and satisfy the narrative discussion requirement. Moreover, the ALJ's conclusion that plaintiff is able to perform a significant range of light work is supported by substantial record evidence.  Accordingly, I respectfully recommend that plaintiff's contention regarding the RFC assessment is without merit.

    D.  <u>Vocational Expert's Hypothetical at Step Five</u>

Plaintiff also contends that, although the vocational expert testified that jobs existed in the national and regional economy that plaintiff could perform, the expert's opinion was based upon hypotheticals which failed to reflect all of plaintiff's impairments and limitations.  "When the testimony of a vocational expert is utilized, as here, the ALJ must present a hypothetical that incorporates all of [p]laintiff's impairments.  If the ALJ fails to pose hypothetical questions that include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response

11

cannot constitute substantial evidence to support a conclusion of no disability." Brodbeck, 2008 WL 681905, at *18 (internal quotations and citations omitted).

Here, the ALJ asked the vocational expert to "assume a hypothetical person of the claimant's age, education, and work history. Let's further assume that [ ] person was capable of lifting up to 20 pounds with the left, non-major extremity. A limited lifting no more than 10 pounds with the right major extremity. Let's further assume that the person could do no overhead reaching with the right major upper extremity. And that there were no limitations regarding the ability to sit, stand, or walk." Said hypothetical incorporated all of the ALJ's findings regarding plaintiff's limitations. As stated above, the ALJ's RFC determination is supported by substantial evidence. Accordingly, I respectfully recommend that plaintiff's contention regarding the ALJ's hypothetical is without merit.

E. Commissioner's Burden of Demonstrating that a Significant Number of Jobs that Plaintiff Could Perform Exist in the National or Local Economy

As part of the step five analysis, the Commissioner has the burden of establishing that jobs that plaintiff could perform exist in the national or local economy. Barnhart v. Thomas, 540 U.S. 20, 25 (2003). In establishing this element, the ALJ relied on the testimony of the vocational expert. After testifying that plaintiff was capable of making a vocational adjustment, she testified that there are 6,000 jobs in the regional economy and 600,000 jobs nationwide for ticket sellers; 5,000 jobs in the regional economy and 460,000 jobs nationwide for small product assemblers; and 2,000 jobs in the regional economy and 20,000 jobs nationwide for information clerks. When questioned about the source of her statistics, the vocational expert cited to the

"Statistical Quarterly." Plaintiff claims no such publication exists. In defendant's cross motion memorandum, he suggests (as the vocational expert testified) that the "Statistical Quarterly" is available on the Internet. Plaintiff replies that he has searched the Internet and contacted the State Department of Labor, and can find no such publication or report.

Plaintiff cites McKinnie v. Barnhart, 368 F.3d 907 (7th Cir. 2004), for the proposition that the ALJ should not have accepted vocational expert testimony that a significant number of jobs existed without first inquiring into the reliability of the expert's opinion. The defendant cites authority from the Ninth Circuit, Bayless v. Barnhart, 427 F.3d 1211 (9th Cir. 2005), for the proposition that a vocational expert's recognized expertise provides the necessary foundation for his or her testimony and that no additional foundation is required.

In the present case, however, the issue is not whether the ALJ inquired into the reliability of the vocational expert's testimony. To the contrary, the record reveals that the ALJ did, in fact, question the vocational expert regarding the source of the numbers. The issue here involves her response: "[t]he statistics come from the Statistical Quarterly . . . which is the Department of Labor." Defendant fails to refute plaintiff's allegation that such a publication does not exist.

It is the Commissioner's burden to establish that there is other gainful work in the national economy which the plaintiff is able to perform. See Tejada, 167 F.3d at 774. As the record now stands, the Commissioner cannot meet his step five burden by relying on what appears to be a non-existent report. Accordingly, I respectfully recommend that the matter must be remanded for further administrative proceedings.

13

## VI. CONCLUSION

For all the foregoing reasons, I conclude, and respectfully recommend, that plaintiff's motion for judgment on the pleadings should be granted to the extent it seeks remand to the Commissioner for further proceedings in accordance with this Decision and Order, and the Commissioner's cross-motion should be denied.

## VII. NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended and Rule 72(b), the parties shall have ten (10) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(d). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable

Requests for extensions of time to file objections must be made to the Honorable Stephen C. Robinson and not to the undersigned.

Dated: August 27th, 2008
White Plains, New York

Respectfully Submitted,

*George A. Yanthis*
GEORGE A. YANTHIS, U.S.M.J.